STATE OF NEBRASKA, EX REL. MRS. C. S. JONES, v. MRS. F. M. WILLIAMS.

FILED MARCH 3, 1898. No. 9609.

Mandamus: Issues: TITLE TO OFFICE. In an application for a writ of mandamus the court will not try the title or right of possession to real or personal property, and by allowing the writ make it subserve the purpose of a writ of ejectment or replevin.

ERROR from the district court of Lancaster county. Tried below before HOLMES, J. *Affirmed.*

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

*J. H. Broady* and *H. A. Babcock, contra.*

*J. R. Webster, amicus curiæ.*

IRVINE, C.

This was an application to the district court of Lancaster county for a writ of mandamus to compel the respondent to surrender to the relator possession of the institution known as the Home for the Friendless, and the books, papers, and other property attached to and connected with said home, belonging to the state of Nebraska. The district court refused the peremptory writ, and the relator brings the case here by petition in error.

From the alternative writ, the return thereto, and the evidence it appears that in 1876 there was incorporated a "Society of the Home for the Friendless," having for its object the protection and assistance of destitute women and children. For several years it conducted its operations without state aid and without permanent quarters. In 1881 an act was passed (Session Laws, ch. 52, p. 247) establishing a Home for the Friendless, providing for its location, and appropriating $5,000 for the erection of such home. The act (sec. 4) also contained the following provision: "The government of said home shall be by and under the supervision of the Society of the Home for the Friendless; *Provided,* That nothing herein contained shall be so construed as to prevent the board of public lands and buildings from establishing rules and regulations for the government of such home in any manner." According to provisions made in the act the home was located at Lincoln, and land was bought and a building erected, the funds being derived from the appropriation referred to and from a donation made by citizens of Lincoln to secure the location. The title to the land was conveyed by the vendor to "the state of Nebraska for the use and benefit of the Home for the Friendless in the state of Nebraska." A provision of the articles of incorporation of the society was that it should be known by and transact business in the name of the "Home for the Friendless." Thenceforth appropriations have been made by successive legislatures for the maintenance of

the home; but the society has appointed all its officers, has devoted certain means of its own to assist in its maintenance, and has been in fact, through its appointees, in possession of the real and personal property belonging to the home. The respondent has for some time been the superintendent of the home by appointment from the society. In 1897 the legislature passed an act (Session Laws, ch. 37, p. 243) whereby the government of the home is vested in the board of public lands and buildings, and certain other provisions are made for supervision, management, and control by officers deriving their authority from the state. Among these provisions is one that the governor shall appoint the superintendent. In pursuance of the latter act the governor appointed the relator to be superintendent of the home, and this action followed the refusal of the respondent to deliver possession thereof to her.

The foregoing statement, together with the requirement of the alternative writ, are sufficient for a disposition of the case. It will be seen that while the case partakes of the nature of an effort by a newly-appointed officer to require a predecessor to surrender the tangible effects of the office, and that in a case where the right to the office is in dispute, and must be determined in order to grant the writ, the real object of the proceeding does not even end at that point, but seeks the determination of the title to land and personal property used in connection therewith. The rival appointees do not assert title in the same right. One represents the society, and so far as the society has property of its own, is undoubtedly entitled to the possession thereof; the other represents the state, and has, irrespective of the respondent's authority, and conceding it to be perfect as representing her source of power, the right to take possession of the state's property which may be subject to the state's disposal in that manner. The respondent is asserting the society's claim to the property, the relator is asserting the state's. The society asserts that the institution is its property; that

the aid received from the state has been in the form of donations; that its supervision through the board of public lands and buildings has been solely to insure that the donations should not be diverted from their purpose; that while the legal title to the land occupied by the home is in the state, it is so in trust for the society, so expressed in the deed by reference to the corporation by the abbreviated name selected by it for the conduct of its business transactions; that the legal title was so reserved also to protect the state against abuse or nonuser of the society's franchises.   The state asserts on the other hand that the act of 1881 established the home as a state institution; that the legal and equitable titles are in the state, and the apparent creation of a trust in the deed was merely a designation of the purpose for which the land was to be used, and not the naming of a *cestui que trust;* that the governmental power heretofore accorded the society was for convenience of administration, and that the society was merely filling a public function; that its power was subject at all times to be divested by new legislation, and that the act of 1897 did divest it and place the government of the state's institution under the control of the state, where it properly belongs.

The office of the writ of mandamus is to compel the performance of an act which the law specially enjoins as a duty arising from an office, trust, or station. (Code of Civil Procedure, sec. 645.)   The duty which every man owes of rendering to another that which is his due is not a duty so specially enjoined by law, although the person owing that duty may happen to occupy an office, trust, or station.   The restatement of such a truism is only excusable because a frequent recurrence to the principle involved is rendered necessary by the incessant attempts to make this extraordinary writ perform the office of the most ordinary processes of the courts—attempts which the courts, unfortunately, have seemed at times to encourage.   In all the instances of the abuse of the remedy we do not think, however, that any case can be found

where, on such an application, the court has tried the title, legal or equitable, to land or personalty, and then, by granting the writ, made it to subserve the purpose of a writ of ejectment or replevin. Yet that is the sole object of this proceeding. The respondent, as officer or agent of the society, is in possession of property of which the society claims the equitable title and the right of possession. The only relief demanded is that she be required to surrender possession of this property to the relator, the officer of the state, which itself claims complete title and right of possession. The issue must be tried in an appropriate action.

AFFIRMED.