STATE OF NEBRASKA, EX REL. SOCIETY OF THE HOME FOR THE FRIENDLESS, v. JOHN F. CORNELL, AUDITOR.

FILED SEPTEMBER 23, 1898.  No. 10008.

1. Claims Against State: APPEAL FROM DECISION OF AUDITOR. Under the constitution every claimant against the state has the right to have the auditor examine and pass upon his claim, and to appeal to the district court from an adverse decision.

2. ——: ——: OFFICERS. Statutes conferring power on other officers to examine claims, and requiring the approval of such other officers before the claim is paid, are at the most requirements as to evidence. They cannot deprive the auditor of the power of passing on the claim or the claimant of the right to appeal.

3. ——: RECORD OF AUDITOR. The auditor is required to keep a record of his action on claims. A memorandum made on a voucher returned to the claimant is not such a record.

4. ——: ——: CORRECTIONS. The auditor, if his records are by mistake or otherwise made to incorrectly state his action, may correct them by making them show what was actually done.

5. ——: DUTY OF AUDITOR: MANDAMUS. If the auditor refuses to examine or pass upon a claim, this court will not examine into

the merits of the claim as a means of determining whether action would be available to the claimant. It will compel action and leave the merits to be examined in the manner provided by law.

ORIGINAL application for mandamus to require the auditor of public accounts to examine, audit, and allow or disallow claims presented by relator against the state. *Writ allowed.*

*J. H. Broady* and *H. A. Babcock*, for relator.

*C. J. Smyth*, Attorney General, and *Ed P. Smith*, Deputy Attorney General, contra.

IRVINE, C.

This case is akin to *State v. Williams*, 54 Neb. 154, and *State v. Cornell*, 54 Neb. 158. It grows out of the same controversy and involves a portion of the claims involved in the latter case. *State v. Cornell, supra*, was an application for a writ of mandamus to compel the payment of certain claims for supplies furnished to the Home for the Friendless and of salaries of officers thereof. The writ was denied because, for the disallowance of claims against the state by the auditor, the law affords an adequate remedy by appeal. After the decision of that case the present was instituted, the relator alleging that vouchers for the claims in controversy had been presented to the auditor and that that officer had declined to act on them or make any record thereof or permit them to remain in his office. The prayer is for a mandamus requiring the auditor to examine, audit, and allow or disallow the claims. The auditor answered denying the validity of the claims, and averring that they had previously been presented to him and that he had disallowed them by indorsing a rejection on each of the vouchers. The case has now been submitted on the pleadings, and the report of the referee appointed to take the testimony.

The first question naturally arising is on the issue whether the auditor did refuse to act, or, on the other hand, disallowed the claims. If he disallowed them no further action can be demanded. The evidence on this issue discloses clearly what was done and resolves the issue into a difference of opinion between the parties as to the legal effect of the auditor's acts. Prior to the institution of the former case the vouchers were presented to the deputy auditor, who examined them only so far as to ascertain that they were on behalf of the Home for the Friendless. Then by him or by his direction there was indorsed on each: "Rejected because not approved by the board of public lands and buildings." After the decision of the former case, when its result was stated to the auditor, he declared that there had been no intention of passing on the claims, but that he had refused to examine them. He then furnished to relator a number of slips for the purpose of having them attached to the vouchers. Each read as follows: "This claim presented for auditing and allowance by the society of the Home for the Friendless, acting through H. A. Babcock as its attorney, and the auditor declines to file, examine, audit, or consider the same because it has not been approved by the board of public lands and buildings, and declines to make any record thereof in the auditor's office."

The constitution provides (art. 9, sec. 9): "The legislature shall provide by law, that all claims upon the treasury, shall be examined and adjusted by the auditor, and approved by the secretary of state, before any warrant for the amount allowed shall be drawn. Provided, that a party aggrieved by the decision of the auditor and secretary of state may appeal to district court." In accordance with this mandate the legislature has so provided. (Compiled Statutes, ch. 83, art. 8.) But the legislature has also undertaken to surround the expenditures on behalf of state institutions with additional safeguards. It has enacted (Compiled Statutes, ch. 83, art. 12) that

certain officers shall constitute a board of purchases and supplies; that vouchers for supplies approved by the board shall be approved by the secretary of state; and that the auditor shall thereupon draw his warrant therefor. It is also provided (Compiled Statutes, ch. 83, art.7) that the board of public lands and buildings shall examine the accounts of officers of institutions, and, if correct, approve them; and the auditor is then directed to draw his warrant. It is further enacted that no such claims shall be entitled to payment until so approved. Presumably the auditor refused to act because these preliminaries had not been satisfied, giving the statutes a literal construction. It is clear that by the constitution the auditor is made the responsible adjusting officer, and the legislation giving effect to the constitutional provision requires him to pass upon claims and to keep a record of his action. The purposes of this case do not require us to determine to what extent it is competent for the legislature to control his action by requiring other officers to examine claims. Certainly the constitution contemplated two things: First, that the auditor should have the power, and on him should rest the duty, of examining every claim upon the treasury; secondly, that every claimant should, by appeal from the auditor's decision, have the right to have tested judicially, and according to the ordinary methods of procedure, his claims against the state. Whatever restrictions the legislature may impose, of the kind to which we have referred, must be merely in the nature of evidential requirements. Without flagrant disregard of the constitution such legislation cannot be given the effect of transferring from the auditor to other officers the power of examining and finally passing upon the merits of claims. Nor can such legislation be given the effect of depriving a party of the right to a judicial inquiry into the justice of his claim, by preventing an appeal. If the auditor may refuse to pass upon a claim because it has not been approved by the board of public lands and buildings, the

refusal of that board to approve a claim would defeat it finally and deprive the claimant of all right to be heard in the manner secured by the constitution. We do not pass upon the question whether the Home for the Friendless is a state institution. Whatever its position it is entitled to have its claims ruled upon by the constitutional accounting officer and to appeal from his decision if adverse.

The proofs show that the auditor in fact refused to pass upon the claim, or to examine its merits, and refused to make any record. It is said that his indorsement on the vouchers was a rejection, and that he had no right to change his record. There are two answers to this argument. The first is that the statute requires the auditor to keep the record. An indorsement on a voucher not retained by the auditor, but returned to the applicant, is not such a record. The other is that if the auditor makes an entry which, through mistake, is false, and does not show what really occurred, he has the power to correct it, just as a court may correct its record. To hold otherwise would be monstrous. The auditor did not here undertake to change his action. He merely undertook to correct a memorandum made by him which incorrectly stated his action.

We do not mean to intimate whether the failure to purchase supplies through the board of purchase and supplies, or whether the failure to obtain the approval of the board of public lands and buildings, would be a sufficient reason for rejecting a claim. It is not a sufficient reason for refusing to pass upon it and make a record for an appeal. Giving the statutes their fullest possible force a claim so situated would only lack the necessary evidence to justify its allowance.

It is argued that because of these defects and on the merits of the claims, they must be disallowed, and that a writ will not issue to compel the performance of a vain act. No authority has been cited to this proposition, nor have we been able to find any. On principle it seems

untenable.  This court has no original jurisdiction of
claims against the state.  An application for a manda-
mus cannot be used to confer jurisdiction to determine
indirectly what the court has no jurisdiction to pass
upon.  Whether we consider the claims clearly good or
clearly bad or of a doubtful character is of no conse-
quence.  The constitution gives the relator the right to
present them, to have them acted upon by the auditor and
to appeal from his decision.  For this court, when such
right has been denied, to inquire into the merits of the
claim and to grant or refuse relief according as we think
the claim should be allowed or rejected would be the
plainest usurpation of authority reposed solely in the au-
ditor in the first instance, and then in the courts through
appellate proceedings alone.  Further, a litigant has a
right to a judgment in the manner provided by law even
if that judgment be adverse to him, especially when such
judgment is the foundation of a right to appeal.  While
the auditor's action is not, strictly speaking, a judicial
investigation and judgment, it is an essential prerequi-
site to such investigation.  To deny him one deprives
him of the other.  All the cases where a court of compe-
tent jurisdiction has been compelled to hear and pass
judgment on a case, without any inquiry by the court
awarding the writ into the merits of the case, or any
direction as to what judgment should be rendered, are, in
principle, applicable, as are those other cases where an
officer clothed with discretion has been compelled to ex-
ercise that discretion without directions as to the manner
of its exercise.  This court, like all others of last resort, is
sometimes called upon to compel the judge of an inferior
court to settle a bill of exceptions.  It has never been
suggested that to such an application it is a good answer
to show that the bill if settled would not disclose any
error.  That is a question that the parties are entitled
to have settled in a different way, and which cannot be
inquired into on mandamus.

Finally it is said that the relator is not the real party

in interest. It claims to own the claims in controversy and its title and its right to assert them are also questions to be passed upon in auditing the claims. They do not justify a refusal to examine them.

WRIT ALLOWED.